In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2534

THE OILGEAR COMPANY,

*Plaintiff-Appellee*,

*v.*

ROBERT A. HITT,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 16-CV-742 — **David E. Jones**, *Magistrate Judge*.

ARGUED JANUARY 8, 2018 — DECIDED JANUARY 12, 2018

Before EASTERBROOK and SYKES, *Circuit Judges*, and
BUCKLO, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. As Oilgear's CEO, Robert
Hitt held restricted stock. When Hitt left his position in 2014,
Oilgear exercised its option to repurchase the shares. Oilgear
and Hitt agreed that he would receive $753,000: $108,000

---

[*] Of the Northern District of Illinois, sitting by designation.

immediately and $215,000 (plus interest) each June for the next three years. The 2015 installment was paid but the 2016 and 2017 installments were not. In this suit under the diversity jurisdiction, Oilgear sought and received a declaratory judgment that it is entitled to defer payment of the 2016 and 2017 installments.

Oilgear also owes money to JPMorgan Chase Bank. Hitt, Oilgear, and the Bank signed an agreement acknowledging that Oilgear's debt to Hitt is subordinate to Oilgear's debt to the Bank. This tripartite agreement provides that Hitt will not be paid while Oilgear is in default of its obligations to the Bank. After paying the 2015 installment, Oilgear defaulted on an obligation to the Bank. Later the Bank agreed to waive most consequences of the default. As a condition of this waiver Oilgear promised the Bank that it would not resume paying Hitt without the Bank's consent. The Bank did not consent to the payment of Hitt's 2016 installment. He does not contend that the Bank's decision was unreasonable but nonetheless insists that he is entitled to be paid.

Hitt's theme is that payment to him is deferred only when Oilgear is in default. Once the Bank waived its remedies, Hitt insists, the bar to payment evaporated. Section 2.3 of the tripartite agreement indeed allows either the default's cure or the Bank's waiver of remedies to permit a resumption of payments to Hitt. But Hitt does not contend that the default has been cured, and the Bank conditioned its waiver on a power to approve additional payments to Hitt. No approval, no waiver; and no waiver (or cure), no payment.

Section 1 of the tripartite agreement provides that Hitt may be paid only if "both before *and after* giving effect to any such payments, no Senior Default exists *or would exist*" (em-

phasis added). If Oilgear were to pay Hitt without the Bank's consent, that would vitiate the Bank's waiver and a default "would exist".

Hitt protests that the consent condition is in a deal between Oilgear and the Bank. That's true but irrelevant. The tripartite agreement defines a "Senior Default" as "any default … under any Senior Debt Document"—documents that are contracts between Oilgear and the Bank. The waiver and its condition are in a "Senior Debt Document" within the scope of the tripartite agreement, so any act that would reinstate Oilgear's default status also affects payments to Hitt.

He maintains that this understanding would make the tripartite agreement illusory. Not at all. Hitt already has received $323,000 for his stock. The other $430,000 remains due, with interest accumulating. It will be paid as soon as (a) Oilgear cures its default, (b) the Bank consents, or (c) the debt to the Bank is paid off through Oilgear's merger or liquidation. Of course, if Oilgear does not have (and never obtains) the money to pay the Bank and Hitt too, then Hitt will lose out, but that's what it means to hold junior debt.

AFFIRMED